**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **RODNEY DEWALT and DEWALT, LLC**<br>**Plaintiffs,**<br><br>**vs.**<br><br>**OPTION 1 REALTY GROUP, BRIAR FOREST PLAZA, L.P., JOHN HAMILTON, LEE MURPHY, JAMES "JIM" FIELDS, and CITIBANK TEXAS, N.A.**<br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CASE NO. 4:07-cv-03688**<br>**Jury Demanded** |

# PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE:

Plaintiffs Rodney DeWalt and DeWalt, LLC, files this First Amended Complaint against Defendants Option 1 Realty Group, Briar Forest Plaza, L.P., John Hamilton, Lee Murphy, James "Jim" Fields, and Citibank, N.A., successor by merger to Citibank Texas, N.A., as follows:

## Parties

1. Plaintiff Rodney DeWalt ("DeWalt") is an individual, resident of Harris County, Texas, who resides at 17711 Butte Creek Road, Houston, Texas 77090.

2. Plaintiff DeWalt, LLC ("DeWalt LLC") is a Texas limited liability company with its principal place of business located at 17711 Butte Creek Road, Houston, Texas 77090.

3. Defendant Option 1 Realty Group ("Option 1") is a Texas corporation that has appeared and answered herein. It shall be served with this First Amended Petition by serving its counsel of record, Macon D. Strother of The Strother Law Firm, at 4545 Mt. Vernon, Houston, Texas 77006.

4. Defendant Briar Forest Plaza, L.P. ("Briar Forest Plaza") is a Texas limited partnership that has appeared and answered herein. It shall be served with this First Amended Petition by serving its counsel of record, Macon D. Strother of The Strother Law Firm, at 4545 Mt. Vernon, Houston, Texas 77006.

5. Defendant John Hamilton ("Hamilton") is an individual who has appeared and answered herein. He shall be served with this First Amended Petition by serving its counsel of record, Macon D. Strother of The Strother Law Firm, at 4545 Mt. Vernon, Houston, Texas 77006.

6. Defendant Lee Murphy ("Murphy") is an individual who has appeared and answered herein. He shall be served with this First Amended Petition by serving its counsel of record, Macon D. Strother of The Strother Law Firm, at 4545 Mt. Vernon, Houston, Texas 77006.

7. Defendant James "Jim" Fields ("Fields") is an individual who has appeared and answered herein. He shall be served with this First Amended Petition by serving its counsel of record, Macon D. Strother of The Strother Law Firm, at 4545 Mt. Vernon, Houston, Texas 77006.

8. Defendant Citibank, N.A., successor by merger to Citibank Texas, N.A. ("Citibank") is a national banking association that has appeared and answered herein. It shall be served with this First Amended Petition by serving its counsel of record, Tanya D. Henderson of Greenberg Traurig, LLP, 2200 Ross Avenue, Suite 5200, Dallas, Texas 75201.

**Jurisdiction and Venue**

9. This action was initially filed on October 1, 2007, as Cause No. 2007-60070 in the 281st Judicial District Court of Harris County, Texas. On November 1, 2007, this action was removed to this Court by Defendant Citibank, N.A., pursuant to 28 U.S.C. § 1331, on the basis of Plaintiffs' claims asserted under 42 U.S.C. §§ 1981 and 1982. This Court has *in personam* jurisdiction over Defendants because they have engaged in business in Texas by, among other things, entering into one or more contracts with a Texas corporation that was to be performed, in part, in the State of Texas. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims against Defendants because Plaintiffs' claims are so related to the claims within this Court's original

jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

10. Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiffs' claims against Defendants occurred in this district. This district has a substantial and sufficient connection with Plaintiffs' claims to make venue proper in this district.

**Background Facts**

11. Plaintiff DeWalt is an African-American who owns 100% of Plaintiff DeWalt LLC. In or about December 2006, Plaintiff DeWalt and his real estate agent met with a representative of Defendant Option 1 to inquire about leasing space for a jazz and blues nightclub to be operated by Plaintiff DeWalt LLC. DeWalt was shown a shell space located at 1925 Highway 6 in Houston, Harris County, Texas ("Leased Premises"), as a potential location for such a nightclub. The Leased Premises is allegedly owned by Defendant Briar Forest Plaza which (upon information and belief) is owned and/or controlled by the same persons as Option 1—specifically Defendants Hamilton, Murphy and Fields. Prior to executing any lease, DeWalt (individually and on behalf of DeWalt LLC) requested certain information about the Leased Premises including (but not limited to) the following: (a) the amount of build-out money available; (b) whether impact fees had been paid to the City of Houston; and (c) what arrangements could be made for the installation of a working sprinkler system and fireline. In response to DeWalt's initial request for information, the following representations were made by Hamilton, Fields, and others on behalf of Option 1 and Briar Forest Plaza: (a) the landlord was willing to provide $23.00 per square foot of tenant finish; (b) all of the applicable impact fees had been previously paid by the landlord; and (c) the landlord was willing to be responsible for bringing in water piping for a sprinkler system if the tenant was willing to be responsible for installing the sprinkler piping.

12. Based upon those initial representations, DeWalt was interested in the space and a lease was prepared between Briar Forest Plaza (as the landlord) and DeWalt LLC (as the tenant). However, before executing any lease, DeWalt visited with Hamilton (who represented himself to be an owner of Option 1 as well as a General Partner of Briar Forest Plaza) who assured DeWalt that leasehold improvement dollars would be paid in full and on time. Additionally, DeWalt met with Fields (who also represented himself to be an owner of Option 1 as well as Briar Forest Plaza) who assured DeWalt that the landlord would timely pay the tenant build-out money as well as install the water line for the sprinkler system. Additionally, DeWalt spoke to one or more representatives of Citibank who confirmed that Briar Forest Plaza had an existing credit line with sufficient funds to pay the amounts to be paid by the landlord under the proposed lease (*i.e.*, the build-out money and the cost of the necessary water piping for the fireline) and that such amounts would be timely funded. Based upon the aforementioned representations and the representations set forth in the proposed lease itself, a Lease Agreement was entered into between Plaintiff DeWalt LLC and Defendant Briar Forest Plaza on December 14, 2006 ("Lease"). Based upon those same representations, DeWalt executed a Lease Guaranty whereby he guaranteed payment of DeWalt LLC's obligations under the Lease.

13. After execution of the Lease, DeWalt LLC retained an architect to prepare the necessary plans, and those plans eventually were approved by Hamilton on behalf of Briar Forest Plaza. When DeWalt requested necessary impact fee information to obtain a building permit from the City of Houston, DeWalt first discovered that the impact fees had *not* been paid as previously (and repeatedly) represented. When confronted, Fields admitted to DeWalt that Briar Forest Plaza did not have sufficient funds to pay the impact fees (totaling $11,390.92) at that time; however, both Hamilton and Fields instructed DeWalt that he could begin work on the Leased Premises without a building permit.

14. The Leased Premises was framed when the City of Houston issued a "red tag" to cease all construction. When Briar Forest Plaza issued the first draw for the sum of $35,370.42 on or about March 8, 2007, DeWalt LLC paid the impact fee of $11,390.92 with a portion of those funds. When DeWalt brought up the issue of the necessary water piping for the fireline, a meeting was held with Fields and others. At that meeting, Fields admitted that Briar Forest Plaza had no money to pay to install the fireline and he proposed that the real estate agents donate their commissions to pay for the fireline or the deal might not proceed. Thus, it appeared that at least two of the initial three representations made to Plaintiffs about the Leased Premises were false.

15. After a second draw was paid and additional construction was completed, DeWalt LLC submitted a third draw request for the sum of $25,000.00 to Briar Forest Plaza on or about June 22, 2007. At that time, Fields admitted that Briar Forest Plaza had no money; nonetheless, Defendant Fields issued a check to DeWalt LLC from Wirtcrest Company, LTD (which Fields represented to be one of his other companies) so that the third draw was paid. While pleased that the third draw was paid, DeWalt became increasing nervous about Briar Forest Plaza's ability to fully fund the project as previously represented and agreed. DeWalt's fears increased when he sought to retain Jim Goode of Custom Fire Protection to install the sprinkler system, and Mr. Goode advised DeWalt that the landlord and its representatives currently owed him over $100,000.00 for prior work.

16. Although Briar Forest Plaza eventually paid a fourth draw request over one month after it was submitted, Briar Forest failed and refused to pay the fifth draw request for the sum of $27,000.00, which submitted to Briar Forest Plaza by DeWalt LLC on or about July 23, 2007. Additionally, Briar Forest Plaza has failed to pay for the necessary water piping for the fireline which needed to be installed before the installation of the sprinkler piping in the Leased Premises. DeWalt contacted one or more representatives of Citibank on several occasions to ascertain whether funds were being paid to Briar

Forest Plaza on the project and to seek an explanation as to why DeWalt LLC was not timely receiving its build-out money as represented and agreed. Representatives of Citibank were evasive and consistently failed to answer DeWalt's questions to his satisfaction. As a result of Defendants' delays in timely authorizing and paying the build-out money owed to DeWalt LLC, as well as the money necessary to pay for the water piping for the fireline, Plaintiffs had to spend substantial amounts of their own money and incur debts in their own names to further completion of the build-out of the Leased Premises. Although the build-out is relatively close to completion, it could be completed without the necessary water piping for the fireline and DeWalt LLC's receipt of all build-out money owed to it by Briar Forest Plaza.

17. In late August 2007, Fields advised DeWalt that Bob Reeves of Citibank would not release the $27,000.00 until the toilets and hot water tank were set in the Leased Premises. That work was completed and DeWalt LLC again requested its draw. On September 14, 2007 Defendant Fields advised DeWalt that there was trash in the adjoining space which had to be removed before a check would be issued. The next day, the small amount of trash was removed by DeWalt, and he a letter to Fields on September 18, 2007, again requesting payment of the unpaid draw. Fields told DeWalt that the letter "pissed off" Defendant Murphy, and he decided not to pay DeWalt LLC its money. Thereafter, DeWalt again met with Fields on September 24, 2007, to seek payment. Fields responded: "can't pay you a dime, you pissed folks off", and invited DeWalt to "sue us".

18. As invited, DeWalt sued all Defendants. However, in the spirit of compromise, all parties engaged in negotiations to potentially settle the lawsuit in January 2008. To induce Plaintiffs to potentially settle this matter, Defendants expressly represented that Defendants Option 1, Briar Forest Plaza, Hamilton, Murphy, and Fields (collectively referred to as the "Briar Forest Defendants") would take the following actions: (a) pay Plaintiffs the sum of $91,768.95 (less a certain possible escrow) at

the time of the settlement; (b) pay Plaintiffs an additional $15,000.00 when the club opened for business; and (c) give DeWalt LLC six months of free rent starting from the date the club received its Certificate of Occupancy from the City of Houston and renewed its liquor license from the State of Texas. No mentioned was ever made by any Defendants or its counsel about Plaintiffs having to submit additional draws to receive said funds or Plaintiffs having to prove that any past, present, or future construction had been completed prior to being entitled to receive the initial payment of $91,768.95 (less a certain possible escrow). Indeed, insofar as the last $27,000.00 draw was never paid and Plaintiffs had spent (or borrowed) more of their own money than they were going to be paid under the proposed settlement, there was no legitimate need for Plaintiffs to submit any further documentation or perform any additional work before getting the initial settlement check. Plaintiffs reasonable thought that they would get the initial settlement payment, use a portion of those funds to complete the build-out and pay any other necessary pre-opening expenses, and then the club would be open for business.

19. Based upon the aforementioned representations as well as the representations and provisions set forth in the proposed settlement agreement, Plaintiffs executed the Settlement Agreement & Mutual Release ("Settlement Agreement") and it was eventually executed by all parties. To Plaintiffs, none of the provisions of the Settlement Agreement appear to contradict the aforementioned representations regarding the consideration to be received by Plaintiffs for settling their claims. However, after the Settlement Agreement was executed by all parties, Defendants breached the Settlement Agreement by failing and refusing to make the required initial payment of $91,768.95 (less a certain possible escrow) when the settlement was consummated. When Plaintiffs demand payment of said funds, Defendants refused to pay the same and advised Plaintiffs *for the first time* that such funds would not be paid until Plaintiff did additional work (which would require Plaintiffs to advance more of their already depleted funds) and submitted additional draw request(s). However, those additional requirements were not

included in the Settlement Agreement, and Plaintiffs never would have agreed to settle this lawsuit under terms requiring them to pay for (or perform) any additional work on the project before receiving the initial payment of settlement funds. In retrospect, it appears that Defendants knowingly (or at least negligently) misrepresented certain facts to induce Plaintiffs to settle, and then attempted to apply other terms after the case was supposedly settled to avoid paying Plaintiffs their money. In any event, Defendants' willful breach of the Settlement Agreement has caused Plaintiffs to suffer additional economic damages and to incur attorney's fees and expenses.

**Conditions Precedent**

20. All conditions precedent to Plaintiffs' right to recover have occurred or have otherwise been satisfied.

**Causes of Action/Requested Relief**

**First Claim - Breaches of Contracts**

21. Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1-20 above, inclusive.

22. Plaintiffs and Defendant Briar Forest Plaza entered into one or more agreements relating to the rental and use of the Leased Premises. As set forth above, Briar Forest Plaza has repeatedly breached those agreements. Such breaches included, but are not limited to, Briar Forest Plaza failing to timely pay draws for build-out money, failing to provide the necessary water piping for the fireline, and constructively evicting (or at least precluding) Plaintiffs from gaining entry and using the Leased Premises for its intended purpose. As a result of the aforementioned breaches by Briar Forest Plaza, Plaintiffs have suffered damages in an amount in excess of the minimum jurisdictional limits of this Court.

23. Additionally and in the alternative, Plaintiffs and Defendants entered into the Settlement Agreement as set forth above; however, Defendants breached that agreement by failing to make the initial settlement payment due upon consummation of the Settlement Agreement. As a result of the aforementioned breach by Defendants, Plaintiffs have suffered damages in an amount in excess of the minimum jurisdictional limits of this Court.

24. Plaintiffs seek recovery from Defendants for their actual damages caused by any breaches of contract, together with prejudgment and post-judgment interest as allowed by law, reasonable and necessary attorneys' fees pursuant to Section 38.001 *et. seq.* of the Texas Civil Practice and Remedies Code, and all costs of court.

**Second Claim - Violations of the Texas Deceptive Trade Practices Act.**

25. Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1-20 above, inclusive.

26. Plaintiff DeWalt LLC is a "consumer" under the Texas Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*) ("DTPA"). DeWalt LLC sought goods and services that form the basis of this complaint. Defendants has been previously notified of DeWalt LLC's specific complaints, but have failed to resolve the problems. DeWalt LLC would show that Defendants violated the Texas DTPA in the following manner:

a. causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

b. representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

c. representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

d. representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

e. the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

27. Defendants' conduct constitutes an "unconscionable action or course of action" as defined in Section 17.45(5) of the DTPA. Furthermore, Defendants' wrongful actions constitute "false, misleading, or deceptive acts or practices" under Subsections 17.46(2), (5), (7), (12), and (24) of the DTPA. As a result of the deceptive acts or practices and unconscionable conduct of Defendants in violation of section 17.50 of the DTPA, DeWalt LLC suffered actual economic damages in an amount in excess of the minimum jurisdictional limits of this Court. Pursuant to Section 17.50(b)(1) of the DTPA, DeWalt LLC seeks to recover from Defendants all of its actual economic damages. In addition, DeWalt LLC would show that the above-referenced DTPA violations were committed knowingly by Defendants; accordingly, DeWalt LLC is entitled to recover additional damages pursuant to the DTPA. In addition, DeWalt LLC is entitled to recover its reasonable and necessary attorneys' fees pursuant to Section 17.50(d) of the DTPA, together with prejudgment and post-judgment interest as allowed by law, reasonable and necessary attorney's fees, and all costs of court.

**Third Claim – Violations of Civil Rights and Anti-Discrimination Laws**

28. Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1-20 above, inclusive.

29. Plaintiff DeWalt is an African-American who is entitled to equal rights and equality under Texas as well as federal laws. DeWalt contends that Defendants' *post hoc* decision to wrongfully refuse to pay build-out money and to install the necessary fireline (and then subsequently refuse to pay the initial settlement proceeds) was intentionally done so that Plaintiffs could not open a jazz and blues nightclub in the shopping center that would be owned by a African-American and likely frequented by persons who were African-American. DeWalt contends that he was treated differently than other tenants of

Briar Forest Plaza, and DeWalt further believes that Defendants' conduct was racially motivated to deprive him and his company of the right to make contracts and lease property in violation of 42 U.S.C. §§ 1981 and 1982. Plaintiffs seek recovery from Defendants for their actual damages and any statutory damages caused by any violations of the aforementioned federal laws, together with prejudgment and post-judgment interest as allowed by law, reasonable and necessary attorneys' fees, and all costs of court.

**Fourth Claims - Common Law Fraud/Fraud in the Inducement**

30. Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1-20 above, inclusive.

31. As set forth above, Defendants made false representations, and material omissions, in relation to the subject transactions. The false representations and material omissions of fact were made by Defendants to induce Plaintiffs to enter into the Lease and the Guaranty Agreement, to pay money to build-out and improve the Leased Premises, and to eventually enter into the Settlement Agreement. Such misrepresentations or omissions were made by Defendants knowingly, or recklessly, with the intention that Plaintiffs would rely upon the same. Plaintiffs did, in fact, rely upon such representations or omissions by entering into the Lease and the Guaranty Agreement, paying substantial sums of money to build-out and improve the Leased Premises, applied and received a liquor license, hired and paid sub contractors and laborers, gave up other opportunities in order to renovate the Leased Premises for the purpose of opening a nightclub, and eventually entering into the Settlement Agreement under false pretenses.

32. To date, such fraudulent conduct by Defendants has proximately caused actual damages in an amount in excess of the minimum jurisdictional limits of this Court. Additionally and in the alternative, Plaintiffs seek rescission of the lease, guaranty and settlement transactions and the return of all money

paid by Plaintiff in relation to the Leased Premises. Furthermore, the aforementioned conduct of Defendants was willful and was motivated by such malice or conscious disregard to the rights and welfare of Plaintiffs as to subject Defendants to exemplary damages in the amount of at least $500,000.00. Plaintiffs would show that they are entitled to recover both actual and exemplary damages from Defendants, together with prejudgment and post-judgment interest as allowed by law and all costs of court.

**Fifth Claim - Negligent Misrepresentation**

33. Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1-20 above, inclusive.

34. In the course of their business, Defendants supplied false information, and failed to disclose material information, to Plaintiffs for their guidance in lease and settlement transactions referred to above. Defendants failed to exercise reasonable care or competence in obtaining or communicating such information in the aforementioned transactions which Defendants intended to influence. As a result of the aforementioned negligent misrepresentations and failures to disclose material information by Defendants, Plaintiffs has suffered actual damages in an amount in excess of the minimum jurisdictional limits of this Court. Plaintiffs would show that they are entitled to recover their actual damages from Defendants, together with prejudgment and post-judgment interest as provided by law and all costs of court.

**Sixth Claim – Tortious Interference with Prospective Contractual Relations**

35. Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1-20 above, inclusive.

36. Defendants were aware that Plaintiffs' intended use of the Leased Premises was as a jazz and blues nightclub. Defendants' intentional and wrongful conduct in failing to pay for build-out and/or

provide a water piping for a fireline as promised resulted in the nightclub not opening, which prevented Plaintiffs from entering into a contractual relationships with prospective patrons who would have paid to attend the club and allow Plaintiffs to recoup their investment. Such actions by Defendants were without justification and have damaged Plaintiffs in excess of the minimum jurisdictional limits of this Court. Furthermore, the aforementioned conduct of Defendants was willful and was motivated by such malice or conscious disregard to the rights and welfare of Plaintiffs as to subject Defendants to exemplary damages in the amount of at least $500,000.00. Plaintiffs would show that they are entitled to recover both actual and exemplary damages from Defendants for their tortious interference, together with prejudgment and post-judgment interest as allowed by law and all costs of court.

**Seventh Claim - Unjust Enrichment**

37. Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1-20 above, inclusive.

38. Additionally and in the alternative, Plaintiffs would show that the receipt and acceptance of improvements to the Leased Premises by Defendants Option 1, Briar Forest Plaza, Hamilton, Murphy, and/or Fields without paying for the same has unjustly enriched said Defendants, and that Plaintiffs will suffer an unconscionable loss if said Defendants are allowed to keep those improvements and benefits without paying for the same. For example (without limitation) Plaintiffs paid the first and last months rent and invested a very large sum of money in preparation for the opening of the nightclub. Moreover, Plaintiff made substantial improvements to the Leased Premises including, but not limited to: erecting metal framing, drywall, tape & floating drywall, painting, plumbing, air conditioning, bars with solid granite counter tops, stage, dance floor, toilets and urinals, solid granite restroom countertops, fire sprinkler system, fire system, alarm system, custom lighting fixtures, doors, tile flooring, wood flooring, permits, licensing, architectural drawings, signs, *etc.* It would be unjust for said Defendants to retain

benefits for Plaintiffs' labor, materials, and money without paying for those benefits. The amount of the unjust enrichment exceeds the minimum jurisdictional limits of this Court. Plaintiff seeks recovery from said Defendants for the unjust enrichment, together with prejudgment and post-judgment interest as allowed by law, and all costs of court.

**Eighth Claim - Attorneys' Fees**

39. Plaintiffs repeat and incorporate by this reference each and every allegation set forth in paragraphs 1-20 above, inclusive.

40. Pursuant to Tex. Civ. Prac. & Rem. Code §38.001 *et seq*., and Tex. Bus. & Com. Code §17.50(d) and any other applicable laws, Plaintiffs are entitled to recover their reasonable and necessary attorney's fees for the investigation and prosecution of this case, and for any post-trial motions and appeals. Plaintiffs have presented these claims to Defendants and Defendants failed to resolve this dispute within either thirty or sixty days of presentment.

**Jury Demanded**

41. Plaintiffs assert their rights under the Seventh Amendment to the United States Constitution and have demanded, in accordance with Rule 38 of the Federal Rules of Civil Procedure, a trial by jury on all issues asserted herein.

WHEREFORE, Plaintiffs, Rodney DeWalt and DeWalt, LLC, respectfully pray that they be granted a jury trial on all of the claims asserted herein, and that said Plaintiff have and recover judgment of and against Defendants Option 1 Realty Group, Briar Forest Plaza, L.P., John Hamilton, Lee Murphy, James "Jim" Fields, and Citibank, N.A., successor by merger to Citibank Texas, N.A., for all relief pled for in this petition, as well as any amendments or supplements thereto, including (but not limited to) the following:

1. actual, additional, statutory, and punitive damages as alleged herein or authorized by law;

2. reasonable and necessary attorneys' fees and expenses incurred to prosecute this lawsuit, through and including the trial on the merits and any post-trial motions and appeals;

3. prejudgment and post-judgment interest at the highest rate allowed by law;

4. all costs of court; and

5. such other and further relief, general and special, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

/s/ G. Scott Williams

**G. SCOTT WILLIAMS**
Texas Bar No. 21536950
So. Dist. of Texas ID No. 9211
8 E. Greenway Plaza, Suite 614
Houston, Texas 77046-0805
Telephone: (713) 522-4881
Facsimile: (713) 626-4545

**ATTORNEY FOR PLAINTIFF DEWALT LLC**

/s/ Rodney DeWalt

**RODNEY DEWALT**
17711 Butte Creek Road
Houston, Texas 77090
Telephone: (832) 286-4702

***PRO SE* - PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May, 2007, a true and correct copy of the foregoing Plaintiffs' First Amended Complaint has been served upon the following counsel of record as authorized by the Federal Rules of Civil Procedure or by electronic mail from the Clerk of the Court:

Macon D. Strother
The Strother Law Firm
4545 Mt. Vernon
Houston, Texas 77006

Tanya D. Henderson
Greenberg Traurig, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201

/s/ G. Scott Williams

______________________________
**G. SCOTT WILLIAMS**